## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| GLENDINE MADDOX | ) | CASE NO. 24-50516-MJK |
| DEBTOR. | ) | |

-------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| SERVBANK, SB | ) | |
| MOVANT, | ) | |
| | ) | CONTESTED MATTER |
| V. | ) | |
| | ) | |
| GLENDINE MADDOX | ) | |
| M. ELAINA MASSEY, TRUSTEE | ) | |
| RESPONDENTS. | ) | |
| | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY WITH WAIVER OF 30-DAY REQUIREMENT OF 11 U.S.C. SECTION 362(e)

**COMES NOW,** Servbank, SB ("Movant"), a secured creditor in the above-captioned case, by and through counsel, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362 and waiver of 30-day requirement of 11 U.S.C. § 362(e) and respectfully shows the Court as follows:

1.     On November 14, 2024, Debtor, filed a petition with the Bankruptcy Court for the Northern District of Georgia under Chapter 13 of Title 11 of the United States Bankruptcy Code.

2.     Movant holds a Promissory Note secured by the Security Deed which describes real property owned by Debtor and known as: 5938 State Route 7 S Gallipolis, Ohio 45631 ("Property"). A copy of the Note, Security Deed and Assignment of Mortgage, are attached hereto as Composite Exhibit "A" respectively.

3.      Debtor executed a Promissory Note secured by a Mortgage or Security Deed. The Promissory Note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the Promissory Note. Movant is the original mortgagee or the beneficiary or the assignee of the Security Deed.

4.      Upon information and belief, the approximate payoff, exclusive of legal fees and expenses incurred in the connection with the instant motion, due and owing to the Movant as of April 8, 2025 is $120,349.56.

5.      Based on the Debtor's schedules, the value of the Property is approximately $153,900.00.

6.      Debtor is in breach of the terms of the Chapter 13 Plan, Note, and Security Deed by failing to make the necessary post-petition payments and is now due for the November 1, 2024 post-petition payment.

Post-petition arrearages are as follows:

| | |
|---|---|
| 1 Payments at $953.85 for 11/1/2024 | $935.85 |
| 5 Payments at $891.42 for 12/1/2024 through 4/1/2025 | $4,457.10 |
| Late Charges   (Pre) | $37.43 |
| Fees and Costs (Post) | $343.00 |
| NSF Fee (Post) | $20.00 |
| Suspense Balance | ($1,023.75) |
| Total Post Petition Arrearage | $4,769.63 |

7.      Debtor's chapter 13 plan provides for surrender of the Property.

8.      Cause exists for relief from the automatic stay. Direct post-petition mortgage payments are not being made to the Movant as required by the Chapter 13 Plan. As such, Movant's interests are not adequately protected.

**WHEREFORE**, Movant prays the Court as follows:

1.      Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Property including but not limited to any non-bankruptcy remedies to foreclose and obtain possession;

2.      An award of attorney fees and cost incurred in conjunction with the filing of the instant motion;

3.      Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay;

4.      As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral;

5.      Movant specifically requests permission to communicate with the Debtors and Debtor's counsel to the extent necessary to comply with applicable non-bankruptcy law and allow client to offer and provide Debtor(s) with information regarding a potential Forbearance Agreement, short sale, deed in lieu, loan modification, Refinance Agreement, or other loan workout/loss mitigation agreement, to enter into such agreement with Debtor(s) without further order of the court; and

6.      Grant Movant such other and further relief as the Court deems just and proper.

/s/Chad R. Simon
Chad R. Simon
Georgia Bar No. 646919
Bonial & Associates
Chad R. Simon
Managing Georgia Attorney
P.O. Box 80156
Atlanta, GA 30341
(770) 856-9046
chad.simon@bonialpc.com

# COMPOSITE EXHIBIT "A"

# ALLONGE

**LOAN NUMBER:** ▮▮▮▮▮▮▮▮

**BORROWER (S):** JOHN THOMAS MADDOX III
GLENDINE MADDOX

**PROPERTY ADDRESS:** 5938 STATE RT 7 S
GALLIPOLIS OH 45631

**NOTE/LOAN AMOUNT:** $124,900.00

**NOTE/LOAN DATE:** 2/4/2021

*PAY TO THE ORDER OF:*

---

## WITHOUT RECOURSE

**COMPANY NAME:** The Money Source Inc

**AUTHORIZED SIGNATURE:**

**PRINTED NAME AND TITLE OF AUTHORIZED SIGNER:** Anthony Forsberg
EVP of Servbank, SB; as attorney in fact for The Money Source

Doc ID: 001031580021 Type: MTG
Recorded: 02/09/2021 at 01:04:01 PM
Fee Amt: $186.00 Page 1 of 21
Gallia County, Ohio
Roger Walker Recorder
File# 2021-00000415

BK **662** PG **180-200**

NORTHWEST TITLE AGENCY
239 EAST MAIN STREET
JACKSON, OH 45640

Mailed to:

Northwest Title Agency
239 E. Main Street
Jackson, Ohio 45640

████████

———————— [Space Above This Line For Recording Data] ————————

After Recording Return To:
CITYWORTH MORTGAGE LLC
11781 LEE JACKSON HWY 1ST FLOOR
FAIRFAX, VIRGINIA 22033

## Open-End
## MORTGAGE

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes      Page 1 of 18

*DocMagic eForms*

**(A)**  **"Security Instrument"** means this document, which is dated  FEBRUARY 4, 2021          ,
together with all Riders to this document.
**(B)**  **"Borrower"** is  JOHN THOMAS MADDOX III AND GLENDINE MADDOX HUSBAND AND
WIFE

Borrower is the mortgagor under this Security Instrument.
**(C)**  **"MERS"** is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under
this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.
**(D)**  **"Lender"** is  CITYWORTH MORTGAGE LLC

Lender is a  VIRGINIA LIMITED LIABILITY COMPANY                           organized
and existing under the laws of  VIRGINIA                                   .
Lender's address is  11781 LEE JACKSON HWY 1ST FLOOR, FAIRFAX, VIRGINIA 22033

**(E)**  **"Note"** means the promissory note signed by Borrower and dated  FEBRUARY 4, 2021          .
The Note states that Borrower owes Lender  ONE HUNDRED TWENTY-FOUR THOUSAND NINE
HUNDRED AND 00/100                          Dollars (U.S. $ 124,900.00          )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in
full not later than MARCH 1, 2051             .
**(F)**  **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)**  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)**  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☒ Other(s) [specify]
                                 VA Assumption Policy Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY   of                    GALLIA                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes      Page 3 of 18

*DocMagic eForms*

L 1227 1228 MID PT SEC;MID PT SEC LOT 12

which currently has the address of    5938 STATE ROUTE 7 S
                                                                        [Street]
                GALLIPOLIS                    , Ohio          45631          ("Property Address"):
                [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 4 of 18

DocMagic eForms

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 5 of 18

*DocMagic eForms*

for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes          Page 6 of 18

DocMagic *eForms*

Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 7 of 18

*DocMagic* *eForms*

particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 8 of 18

*DocMagic* &Forms

policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 9 of 18

*DocMagic eForms*

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking,

destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes      Page 11 of 18

*DocMagic eForms*

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes       Page 12 of 18

*DocMagic* **e**Forms

be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property; Acceleration; Assumption. This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code. The acceptability of any assumption shall also be subject to the following additional provisions:**

**(a) Funding Fee: A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).**

**(b) Processing Charge: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.**

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 13 of 18

*DocMagic eForms*

(c) **Indemnity Liability Assumption: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.**

**If the acceptability of the assumption of this loan is not established for any reason, and Lender exercises its option to declare all sums secured by this Security Instrument immediately due and payable, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.**

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer,

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes       Page 14 of 18

*DocMagic eForms*

Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances**. As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 15 of 18

*DocMagic eForms*

which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office,

County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 23 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes       Page 16 of 18

*DocMagic* **eForms***

## NOTICE TO BORROWER

**Department of Veterans Affairs regulations at 38 C.F.R. 36.4337 provide as follows:**

**"Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto."**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Executed this    4    day of    Feb 2021

_____(Seal)          _____(Seal)
JOHN  THOMAS  MADDOX     -Borrower          GLENDINE  MADDOX     -Borrower
III

_____          _____
Witness                                         Witness

(Execution in accordance with Chapter 5301 of the Revised Code.)

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 17 of 18                    *DocMagic eForms*

———————————— [Space Below This Line For Acknowledgment] ————————————

State of ___OHIO_____

County of ___Jackson_____

The foregoing instrument was acknowledged before me this ___Feb 4 2021___
(date)

by ___JOHN THOMAS MADDOX III AND GLENDINE MADDOX___, _husband and wife_

_____

_____
(name of person acknowledging)

_____
(Signature of Person Taking Acknowledgment)

_____
(Title or Rank)

YOLANDA L COLLIER
Notary Public
State of Ohio
My Comm. Expires
February 14, 2025

(Seal)

This Instrument Prepared By:

Loan Originator: DYLAN CHRISTOPHER MARTIN, NMLSR ID ████
Loan Originator Organization: CITYWORTH MORTGAGE LLC, NMLSR ID ████

OHIO - Single Family - UNIFORM INSTRUMENT - MERS
MODIFIED FOR DEPARTMENT OF VETERAN AFFAIRS
(Rev. 1/01) With Authorized Changes        Page 18 of 18        DocMagic eForms

## EXHIBIT "A"

Situated in the Township of Gallipolis, County of Gallia and State of Ohio:

**PARCEL ONE:**

The following described real estate situate in Section 32 of Gallipolis Township, Gallia County, Ohio. Beginning at a steel pipe, which is the Southwest corner of the parcel described in Volume 181, Page 765, of the Deed Records of Gallia County; thence West 46.6 feet to a steel angle fence post; thence North 2° 44' East 102.75 feet along a fence line to a steel T post; thence South 88° 25' East 39.5 feet to a steel T post, which is the Northwest corner of the parcel described in Volume 181, Page 765; thence along the West line of the aforesaid parcel 100.7 feet to the place of beginning, **containing 0.10 of an acre**, more or less.

Parcel No. 006-001-535-01

**PARCEL TWO:**

The following described real estate situate in Section 32 of Gallipolis Township, Gallia County, Ohio. Beginning at a point in the center of State of Ohio Highway Number 7, which point is located by following, in a Southerly direction, a curve to the left, the radius of which is 3819.8 feet, a distance of 99.1 feet, from another point in the center of said highway, which other point is Station 4 plus 38.5 of a survey made by the State of Ohio Department of Highways on said existing Highway Number 7 and said other point also being 1013.4 feet, and bearing approximately South 10° 20' West from the point of intersection of the section line between Sections 32 and 33 in said Township and the center line of said highway; thence in a Southerly direction with a curve to the left, the radius of which is 3819.8 feet, a distance of 99.1 feet; thence West 340 feet to a steel pipe; thence North 7° 30' East 100 feet; thence East to the place of beginning, **containing .745 of an acre**, more or less.

Parcel No. 006-001-549-00

Parcel Nos.: 006-001-535-01 (Parcel One) and 006-001-549-00 (Parcel Two)
Prior Deed Reference: OR Vol. 601, Page 713 of the Gallia County, Ohio records

# VA ASSUMPTION POLICY RIDER

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS ASSUMPTION POLICY RIDER is made this   4th   day of      FEBRUARY, 2021          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt ("Instrument") of the same date herewith, given by the undersigned ("Borrower") to secure the Borrower's Note ("Note") of the same date to   CITYWORTH MORTGAGE LLC

(the "Lender") and covering the property described in the Instrument and located at:

5938 STATE ROUTE 7 S, GALLIPOLIS, OHIO 45631
(Property Address)

Notwithstanding anything to the contrary set forth in the Instrument, Borrower and Lenderr hereby acknowledges and agrees to the following:

GUARANTY:  Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits", the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY:  If all or any part of the Property or any interest in it is sold or transferred, this loan shall be immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

**(A)  ASSUMPTION FUNDING FEE:** A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Secretary of Veterans Affairs.  If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable.  This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

**(B)  ASSUMPTION PROCESSING CHARGE:** Upon application for approval to allow assumptions and transfer of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed.  The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which section 3714 of Chapter 37, Title 38, United States Code applies.

**(C)  ASSUMPTION INDEMNITY LIABILITY:** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this Assumption Policy Rider.


_____ (Seal)          _____ (Seal)
JOHN  THOMAS  MADDOX          -Borrower          GLENDINE  MADDOX          -Borrower
III

INDECOMM GLOBAL SERVICES
1427 ENERGY PARK DR
SAINT PAUL, MN 55108-9984



Doc ID: 00123456789 Type: TWS
Recorded: 12/17/2024 at 10:26:04 AM
Fee Amt: $38.00 Page 1 of 1
Gallia County, Ohio
Roger Walker Recorder
File# 2024-00003440

BK 731 PG 900 ✶

# Assignment of Mortgage

When Recorded Return To:
Indecomm Global Services
1427 Energy Park Drive
ST. PAUL, MN 55108

Dated: **December 6, 2024**

MIN:
MERS

For value received **Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for
CITYWORTH MORTGAGE LLC, its successors and assigns**, P.O. Box 2026, Flint, MI 48501-2026,
the undersigned hereby grants, assigns and transfers to **SERVBANK, SB**, 3138 E. Elwood St., Phoenix,
AZ 85034, all beneficial interest under a certain Mortgage dated **February 4, 2021** executed by **JOHN
THOMAS MADDOX III AND GLENDINE MADDOX** and recorded in Book 662 on Page(s) **180** as
Document Number **2021-00000415** on **February 9, 2021** of the official records of the County
Recorder of Gallia County, Ohio

Mortgage Electronic Registration Systems, Inc., as
mortgagee, as nominee for CITYWORTH
MORTGAGE LLC, its successors and assigns

By: _____

**DEBRA M STEIDL,**
**Vice President**

STATE OF **Minnesota**                )
COUNTY **Ramsey**                ) SS

On **December 6, 2024** before me, Shoua Lee , Notary Public in and for said State personally
appeared **DEBRA M STEIDL** , **Vice President** of Mortgage Electronic Registration Systems, Inc.,
**as mortgagee, as nominee for CITYWORTH MORTGAGE LLC, its successors and assigns**,
personally known to me to be the person whose name is subscribed to the within instrument and
acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the entity upon behalf of which the person acted, executed the instrument.
WITNESS my hand and official seal.

This instrument was prepared by:
Prakashini B
1427 Energy Park Drive
St. Paul, MN 55108



**Shoua Lee, Notary Public**
Commission #: 31049342
My Commission expires: **January 31, 2027**

SHOUA LEE
Notary Public-Minnesota
My Commission Expires Jan 31, 2027

Case Number:

# NOTE

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

FEBRUARY 4, 2021                    FAIRFAX                         VIRGINIA
[Date]                              [City]                          [State]

5938 STATE ROUTE 7 S, GALLIPOLIS, OHIO 45631
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 124,900.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CITYWORTH MORTGAGE LLC, A VIRGINIA LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.125      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on        APRIL 1      , 2021           . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on        MARCH 1, 2051         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 11781 LEE JACKSON HWY 1ST FLOOR, FAIRFAX, VIRGINIA 22033

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 605.33

---

MULTISTATE FIXED RATE NOTE--Single Family
MODIFIED INSTRUMENT FOR DEPARTMENT OF VETERANS AFFAIRS
USFN.VA  (Rev. 1/01)                    Page 1 of 4                    DocMagic eForms

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment. I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However. the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount. before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment. there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal. the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        1 5 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be     4 . 0 0 0  % of my overdue payment of principal. interest, and escrow for taxes and insurance.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if. at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include. for example. reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method. any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

**Transfer of the Property; Acceleration; Assumption.  This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.  The acceptability of any assumption shall also be subject to the following additional provisions:**

**(a)  Funding Fee:  A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs.  If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable.  This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).**

**(b)  Processing Charge:  Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed.  The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.**

**(c)  Indemnity Liability Assumption:  If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan.  The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.**

**If the acceptability of the assumption of this loan is not established for any reason, and Lender exercises its option to declare all sums secured by this Security Instrument immediately due and payable, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which**

MULTISTATE FIXED RATE NOTE--Single Family
MODIFIED INSTRUMENT FOR DEPARTMENT OF VETERANS AFFAIRS
USFN.VA  (Rev. 1/01)                                              Page 3 of 4

DocMagic *eForms*

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## NOTICE TO BORROWER

Department of Veterans Affairs regulations at 38 C.F.R. 36.4337 provide as follows:

"Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto."

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE--Single Family
MODIFIED INSTRUMENT FOR DEPARTMENT OF VETERANS AFFAIRS
USFN.VA  (Rev 1/01)                                    Page 4 of 4

DocMagic eForms

# ALLONGE

**LOAN NUMBER:** ███████████

**BORROWER (S):** JOHN THOMAS MADDOX III
GLENDINE MADDOX

**PROPERTY ADDRESS:** 5938 STATE RT 7 S
GALLIPOLIS OH 45631

**NOTE/LOAN AMOUNT:** $124,900.00

**NOTE/LOAN DATE:** 2/4/2021

## *PAY TO THE ORDER OF:*

---

## WITHOUT RECOURSE

**COMPANY NAME:** The Money Source Inc

**AUTHORIZED SIGNATURE:**

**PRINTED NAME AND TITLE OF AUTHORIZED SIGNER:** Anthony Forsberg
EVP of Servbank, SB; as attorney in fact for The Money Source

## ALLONGE TO PROMISORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE:

NOTE DATE: FEBRUARY 4, 2021          ORIGINAL PRINCIPAL: $124,900.00

BORROWER NAME: JOHN THOMAS MADDOX III AND GLENDINE MADDOX

PROPERTY ADDRESS:5938 STATE ROUTE 7 S, GALLIPOLIS, OHIO 45631

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Pay to the order of:  The Money Source Inc.

Without recourse

By:  Cityworth Mortgage LLC, A Virginia Limited Liability Company
Name:  David Shumway
Title:   President

# Supporting docs